CHARLES D. WAY *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A verdict ought not to be directed for the defendant upon the ground of the plaintiff's contributory negligence, unless the evidence thereof is so clear as to render any other inference or conclusion unreasonable.

The evidence in the present case reviewed and *held* not to have warranted the action of the trial court in directing a verdict for the defendant.

Submitted on briefs January 4th—decided March 15th, 1916.

ACTION to recover damages for injury to the person and property of the plaintiff, alleged to have been caused by the defendant's negligence, brought to the Superior Court in Tolland County and tried to the

jury before *Webb, J.;* by direction of the court the jury returned a verdict for the defendant, from the judgment on which the plaintiff appealed. *Error and new trial ordered.*

*Lewis Sperry,* with whom was *Warren B. Johnson,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant).

PER CURIAM. When the plaintiff had concluded his evidence in chief and rested, the defendant rested and moved for the direction of a verdict in its favor, which was granted. It is conceded that there was evidence sufficient to go to the jury upon the question of the defendant's negligence. The verdict was directed upon the ground that the plaintiff had failed to show that he was free from contributory negligence.

The accident occurred in East Hartford, at a point where Pitkin Street enters Main Street leading from Glastonbury to East Hartford village, through a collision between one of the defendant's cars proceeding in a northerly direction toward East Hartford and the plaintiff's team, consisting of a pair of horses attached to a wagon, which he was driving. The defendant's tracks are laid upon the west side of Main Street. Pitkin Street enters Main from the west, making at the southwest corner a decided obtuse angle. The view to the south which a traveler approaching Main Street on Pitkin Street has, until he arrives within about one hundred and twenty-five feet from Main Street, is cut off by buildings and a tree. From this point to something like thirty-five or forty feet from Main Street, the view is more or less obstructed by trees, bushes and poles, depending upon the particular point of observation and the portion of Main Street to be

observed. The first ten of the last thirty-five or forty feet do not present an altogether clear view, but the last twenty-five feet or so do.

The plaintiff testified—and his was the only testimony upon the subject—that, from the time he got clear of the buildings until he saw the car, he, having already seen that the road to the north was clear, kept a continuous lookout to the south and listened to hear if anything was approaching from that direction, and that seeing and hearing nothing he proceeded at a pace only slightly above a walk, keeping his ordinarily gentle team well in hand until he reached a point where he was about twenty-five feet, and his horses' heads about half that distance, from the trolley-tracks, when he caught sight of the car coming from the south at great speed and then only some ninety or one hundred feet away; that by reason of the obtuse angle of the junction of the two streets the horses were thus brought almost face to face with the car, and that they, becoming frightened, swerved to the left in spite of his best efforts to stop or control them, and were caught by the car, with the result that the injuries complained of were received.

With this testimony presented, there was evidence to go to the jury upon the issue as to the plaintiff's contributory negligence. Upon it, he was not proceeding heedless of his surroundings and their possible perils for him. He made use of both his eyes and ears to discover whether a car was approaching. Whether ordinary prudence demanded that he take more precautions than he did before arriving at the point where his horses became frightened, was a question for determination. After that time he had no control of the situation, and there certainly is nothing in the testimony upon which subsequent improper conduct can be predicated. Into the decision of the question indi-

cated, there enter various factors worthy of consideration such as, for instance, the character and extent of the obstructions to his view during the last one hundred or one hundred and twenty-five feet of his course, the reliance which he might reasonably place upon the sufficiency of his observation and hearing, his reasonable belief in the responsiveness of his horses to control, the speed at which the car was running, his reasonable belief as to what might be anticipated in the matter of its speed and as to the signals which would be given, and his ability to hear such signals as might be expected. These, and other relevant matters, formed a state of relevant and more or less interrelated facts for the jury's consideration and decision. They did not point so clearly to imprudent conduct on the plaintiff's part that a contrary conclusion could not have been reached reasonably.

There is error, the judgment is set aside and a new trial is ordered.